Date signed March 11, 2010



PAUL MANNES
U. S. BANKRUPTCY JUDGE

UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF MARYLAND
at Greenbelt

| | | |
|---|---|---|
| IN RE: | : | |
| | : | |
| SASAN FOROUTAN | : | Case No. 08-25594PM |
| | : | Chapter 7 |
| Debtor | : | |
| - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - | : | |
| MICHAEL G. WOLFF, Trustee | : | |
| Plaintiff | : | |
| vs. | : | Adversary No. 09-0279PM |
| | : | |
| SASAN FOROUTAN | : | |
| MITRA FOROUTAN | : | |
| Defendants | : | |
| - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - | : | |

**MEMORANDUM OF DECISION**

On June 3, 2008, Debtor conveyed his one-half interest in 6980 Hanover Parkway, Unit 302, Greenbelt, Maryland, 20770, to his wife, Mitra Foroutan (sometimes "Mitra"), and himself as tenants by the entireties. This Deed was recorded on July 28, 2008. As the deed reflects, there was no monetary consideration given for the transfer. Sasan Foroutan (sometimes "Debtor" or "Sasan") filed a bankruptcy case under Chapter 7 on November 25, 2008. The effect of the transfer was to place the Debtor's interest in the property beyond the reach of his creditors. *In re Ford*, 3 B. R. 559 (B.C. Md. 1980), *aff'd sub nom. Greenblatt v. Ford,* 638 F.2d 14 (CA4 1981); *Ford v. Poston*, 773 F.2d 52 (CA4 1985). To undo the conveyance, the Trustee filed this adversary proceeding to avoid and recover a fraudulent conveyance, and to deny the Debtor's discharge. For the reasons set forth herein, the court will enter Orders avoiding the conveyance

and ruling in favor of the Debtor on the Trustee's objection to Debtor's discharge.

The following sections of the Bankruptcy Code govern this decision:

### 11 U.S.C. § 548. Fraudulent transfers and obligations

(a)(1) The trustee may avoid any transfer (including any transfer to or for the benefit of an insider under an employment contract) of an interest of the debtor in property, or any obligation incurred by the debtor, that was made or incurred on or within 2 years before the date of the filing of the petition, if the debtor voluntarily or involuntarily--
    (A) made such transfer or incurred such obligation with actual intent to hinder, delay, or defraud any entity to which the debtor was or became, on or after the date that such transfer was made or such obligation was incurred, indebted; or
    (B)(i) received less than a reasonably equivalent value in exchange for such transfer or obligation; and
        (ii)(I) was insolvent on the date that such transfer was made or such obligation was incurred, or became insolvent as a result of such transfer or obligation.

### 11 U.S.C. § 550. Liability of transferee of avoided transfer

(a) Except as otherwise provided in this section, to the extent that a transfer is avoided under section 544, 545, 547, 548, 549, 553(b), or 724(a) of this title, the trustee may recover, for the benefit of the estate, the property transferred, or, if the court so orders, the value of such property, from--
    (1) the initial transferee of such transfer or the entity for whose benefit such transfer was made; or
    (2) any immediate or mediate transferee of such initial transferee.

### 11 U.S.C. § 727. Discharge

(a) the court shall grant the debtor a discharge, unless--
    *        *        *        *        *
    (2) the debtor, with intent to hinder, delay, or defraud a creditor or an officer of the estate charged with custody of property under this title, has transferred, removed, destroyed, mutilated, or concealed, or has permitted to be transferred, removed, destroyed, mutilated, or concealed--
        (A) property of the debtor, within one year before the date of the filing of the petition; or
        (B) property of the estate, after the date of the filing of the petition.

The operative facts are undisputed, with the notable exception of the two factual issues

discussed below. Among the Debtor's business ventures was an agreement with Davar Davari-Fard to engage in a granite and stone fabrication business in Northern Virginia. Davari-Fard filed a lawsuit in the Circuit Court for Montgomery County, Maryland, Civil No. 275335-V, on September 28, 2006 [Plaintiff's Exhibits No. 3 and 4], alleging misappropriation by the Debtor of funds from the venture. In the course of that litigation, the parties agreed that the matter would be submitted to binding arbitration before retired Circuit Court Judge William C. Miller. In due course, Judge Miller issued his findings and an award on October 30, 2007, in favor of Davari-Fard against Sasan Foroutan in the sum of $66,039.75 [Plaintiff's Exhibit No. 5]. The day after the arbitrator's findings and award were filed in the Circuit Court, Debtor filed a petition to vacate the award, Civil No. 289373-V. Debtor filed a motion for summary judgment in that action that was denied by the Circuit Court by Order entered April 23, 2008. After the recording of the deed described above and Debtor's transfer of his interest in his Toyota automobile to Mitra, Davari-Fard filed a motion for summary judgment on August 13, 2008. By Order entered October 23, 2008, the Circuit Court granted his motion for summary judgment and confirmed the arbitration award.

     The primary factual issue before this court is Debtor's actual intent in making the transfers. His Answer to the complaint filed in the instant matter stated that these transfers were done in connection with estate planning and that there was no fraudulent intent in the transfers. In the course of this trial, Debtor's actions were recharacterized as a marital reconciliation program, the purpose of which was to reimburse Mitra, who was the source of almost all of the funds used for investments made by the Defendant in the course of their marriage.

     The court finds Mitra Foroutan's testimony credible in all respects. She worked throughout the marriage of the Debtors. All funds of the parties, including $200,000.00 from Mitra's father that she brought with her to the United States and the proceeds from the sale of their jointly owned gas station and other real estate, were placed in their joint account that was controlled by the Debtor. The real property in issue was purchased with funds from the joint account, and all payments on the purchase money mortgage were also made from that account. Sasan Foroutan had no money of his own and no independent source of income or, as Mitra stated, he had nothing. For a while, Mitra was the only one of the two making money. The family was falling apart and, for her own physical and emotional well-being, she wanted a divorce from Sasan. Mitra testified that, during the course of discovery, she was too embarrassed to tell the Trustee about the divorce. In her mind, the transfer was to set the record

straight by adding her name to the title.  According to Sasan, he made the transfer in response to the pressure that his wife was putting on him and not because of creditor pressure.  Mitra's application of pressure was constant, as were her discussions of leaving him.  The purpose of the transfer, Sasan contends, was to make Mitra feel more secure.

The other disputed factual issue concerns the value of the property at the time of the transfer.  Debtor's Schedule D states that the value of the Hanover Parkway property is $129,000.00, that a co-debtor exists, and that the property is encumbered by a debt of $49,010.29 that is secured by a deed of trust.  No one questions the validity and amount of the debt.  Schedule H identifies the co-debtor as Mehran Khadivi (sometimes "Khadivi").  Khadivi was called as a witness to testify as to the value of the property but his testimony was useless in that respect. However, on Schedule A, the Debtor says the value of **his** interest in the property is $129,000.00.  The property had been listed for sale at the price of $149,000.00 for nearly nine months before trial.  The Trustee urges that, based on Schedule A, the court can find that the property was worth $258,000.00 at the time of trial and uses Defendants' Exhibit No. 1 to show that the current tax assessment is $166,000.00.  But, the State Department of Assessments and Taxation records, upon which that exhibit is based, indicate that the property was purchased by the Debtor and Khadavi for $72,000.00 on July 2, 2003.  The court finds it beyond belief that the value of the property nearly quadrupled in the five years between that purchase and the transfer complained of.  While the Trustee testified that he had no quarrel with the Debtor's valuation of his interest, in view of the ambiguity created by Schedules A and D, the court declines to find the value as asserted by the Trustee.  Nor does the court accept his argument that there was a massive devaluation in property values between June, 2008, and today.  Neither party offered an expert to opine as to the value of the property on the date of the transfer.  Accordingly, the court finds the value of the property to be $129,000.00, as scheduled by the Debtor.

The simplest part of this decision involves the Count involving a fraudulent conveyance under § 548(a)(1)(B) where the court need not deal with the Debtor's intent.  It is conceded that, at the time of the transfers, the Debtor was insolvent.  Apart from that concession, based upon the Trustee's examination of the Debtor and Debtor's Schedule F, it is clear that the Debtor was, beyond any stretch of the imagination, insolvent at the time of the transfers to his wife.  Aside from the moral satisfaction that he might have received for doing something that he should have done long ago, it cannot be said that Debtor received reasonably equivalent value in exchange for the transfer. This case presents a text book example of a constructive fraudulent transfer. *See In re*

*Jeffrey Bigelow Design Group, Inc.*, 956 F.2d 479, 484 (CA4 1992); *Ressmeyer v. Norwood*, 83 A. 347, 352 (Md. 1912). Unlike an action seeking the denial of Debtor's discharge under 11 U.S.C. § 727(a)(2), a plaintiff in an action based on an allegedly constructive fraudulent transfer need not prove actual intent to hinder, delay or defraud a creditor. *Cf. Tavenner v. Smoot*, 257 F.3d 401, 408 (CA4 2001). In any event, even had the Debtor characterized these transfers originally as a property settlement with his wife, the transfers were placed squarely within the sights of § 547(b) of the Bankruptcy Code and the avoidance powers of preferential transfers. The exception of § 547(b) pertaining to domestic support obligations, as defined in § 101(14A)(C), does not apply to the transfers to Mitra. Therefore, under § 550(a), the Trustee may recover either the property transferred or the value of the property. Under the circumstances of this case, the court finds the Trustee is entitled to the value of the property transferred, that is, one-half of the equity in the property, or $39,994.86.[1] Similarly, the Trustee is entitled to recover the value of the 2000 Toyota ForeRunner that the parties agree was worth $2,600.00 at the time of the transfer.

The issue of the denial of the Debtor's discharge is far more complex. Here, the court must determine whether the Debtor had actual intent to defraud his creditors. As has been said in numerous cases, it is unlikely that a debtor will admit that he intended to hinder, delay or defraud his creditors. The Debtor's intent may be established by a course of conduct or circumstantial evidence. To undertake this task, courts have identified several badges of fraud that tend to show the debtor's actual intent to defraud. *See In re Woodfield*, 978 F.2d 516, 518-19 (CA9 1992); *In re Soza*, 542 F.3d 1060, 1067 (CA5 2008). These include the following:

(1) **Lack or inadequacy of consideration for the property transferred.** The Deed transferring the subject property [Plaintiff's Exhibit No. 12] is a no-consideration gift deed, regardless of Mitra's moral claims upon the Debtor. None of the claims against Debtor were released or diminished in the slightest degree by these transactions and, furthermore, Mitra is not listed as a creditor.

(2) **Some retention of the property for personal use**. The rents received from this

---

[1] Section 550(a) provides for the avoidance of the transfer under §548 and recovery of the property or recovery of the value of the property. If the Trustee is of the opinion that the value assigned by the court to the Debtor's 50% interest in the Hanover Place property is incorrect, the court invites the Trustee to file a motion for reconsideration, and the court will amend its order to provide for recovery of the 50% interest transferred, rather that the money judgment.

property were placed in the joint account of the parties.  Debtor had as much control over the property as he did prior to the transfer.

(3) **Whether the transfer resulted in an insolvency**.  Here, the Debtor was insolvent at the time of the transfers. These transactions drove him further under water.

(4) **Accumulative effect of the Debtor's transactions and the onset of litigation or threat of litigation by creditors**.  Here, the Debtor was actively engaged in litigation with his former business associate.  The arbitration conducted by Judge Miller resulted in a substantial award against him.  While the Trustee urges that the turning point in the litigation was the April 2008 denial of the Debtor's motion for summary judgment in Debtor's suit to vacate the arbitration award, the court believes that the dye was cast at the time of the entry of the arbitration award in October 2007.  Were that the driving force in Debtor's efforts to place assets out of the control of creditors, the court finds that the transactions would have taken place many months before the time that they did.

(5) **A family relationship between the parties.**  The Debtor and the transferee were married at the time of the transfer and remain so today. Transfers without consideration to family members are often viewed as prima facie evidence of fraudulent conduct.  *Bailey v. Blackmon,* 3 F.2d 252, 253 (CA4 1924); *In re Fraidin*, 257 B.R. 437, 441 (B.C. Md. 2001).

(6) **Suspicious chronology of events and transfers**.  The court finds nothing in the chronology to raise suspicions as to Debtor's intent.  The transfer was made well into the course of the case brought against Debtor.  Had it been made in closer proximity to Judge Miller's ruling, the court might reach a different result.

Notwithstanding the existence of the several badges of fraud, the court finds that the Debtor's intent at the time of the transfers was more in the nature of an effort to make peace with his wife so as to quiet her regarding the issue of his appropriation of her funds and to put an end to the pressure applied by her.  The tragedy insofar as Mitra was concerned was her failure to bring the curtain down earlier on the marriage and to obtain relief through a divorce action.  As pointed out in the case of *Flanagan v. Flanagan*, 956 A.2d 829, 845, n.10 (Md. App. 2008), Maryland courts are now empowered under MD. CODE ANN. FAM. LAW § 8-205(a) (2006) to transfer the interest of one of the parties in real property to the other party.  This changed longstanding Maryland law found in such cases as *McCally v. McCally*, 243 A.2d 538 (Md. 1968).  To this observer, because of the massive disproportion of the contributions between the parties to the purchase of the real estate, there would appear to be considerable likelihood for

Mitra to receive a substantial portion, if not all, of the Hanover Parkway real property. However, Mitra did not pursue that course of action.

In the course of the trial, the court permitted the Trustee to amend his Complaint objecting to the Debtor's discharge by including a count under § 727(a)(4)(A) that provides:

> **11 U.S.C. § 727.  Discharge**
>
> (a) the court shall grant the debtor a discharge, unless--
> \*          \*          \*          \*          \*
> (4)(A) made a false oath or account.

The false testimony is that relating to the change of direction from estate planning purposes to marital dissolution purposes. The court finds this argument to be a distinction without a difference. The court does not find this description of what was done a sufficient basis for denial of Debtor's discharge.

For the foregoing reasons, the court will enter an order for judgment on the fraudulent conveyance Count as described above and will enter an order in favor of the Defendant on Count I objecting to Debtor's discharge.


cc:
Jeffrey M. Orenstein, Esq., 15245 Shady Grove Road, Suite 465, Rockville, MD 20850
Richard H. Gins, Esq., 3 Bethesda Metro Center, #530, Bethesda, MD 20814
United States Trustee, 6305 Ivy Lane, #600, Greenbelt  MD  20770

**End of Memorandum**